**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**M-D MEDICAL SERVICES, INC.**                                                                    **PLAINTIFF**

**vs.**                                                         **CIVIL ACTION No.: 3:18-CV-336-HTW-LRA**

**M.A.S.H., INC., GREGORY L. HORN
and CHARLES BORDENCA**                                                              **DEFENDANTS**

<u>**ORDER**</u>

BEFORE THIS COURT is the *Motion to Dismiss for Lack of Personal Jurisdiction* **[Docket no. 3]** filed by defendants M.A.S.H., INC. ("M.A.S.H"), Gregory L. Horn ("Horn"), and Charles Bordenca ("Bordenca") (hereinafter collectively referred to as "Defendants"). The Defendants filed their memorandum brief in support of their motion to dismiss on the same date, May 24, 2018 [Docket no. 4].  Plaintiff M-D Medical Services, Inc. (hereinafter referred to as "M-D Medical" or "Plaintiff") filed its response in opposition and memorandum in support of its opposition on June 7, 2018 [Docket no. 7].  Defendants filed their second memorandum in support of their motion to dismiss on June 18, 2018 [Docket no. 10].

In their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2)[1], Defendants campaign that each of them lacks sufficient contacts with Mississippi to support the assertion of personal jurisdiction over them according to the requirements of Mississippi's Long-Arm Statute and Due Process under the Fourteenth Amendment to the United States Constitution.  For the reasons presented herein, this Court disagrees with the Defendants and hereby denies the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. **[Docket no. 3].**

---

[1] Rule 12 of the Federal Rules of Civil Procedure provides:
(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:…(2) lack of personal jurisdiction.

This court possesses federal subject matter jurisdiction over the parties based on diversity of citizenship under Title 28 U.S.C. § 1332[2] because the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is between citizens of different states.  Complete diversity of citizenship exists here, as none of the defendants resides in the same state as the plaintiff[3].

## I.  FACTUAL HISTORY

This lawsuit arises from a contractual agreement between M-D Medical and M.A.S.H, whereby M-D Medical agreed to provide certain enteral nutrition[4] and supplies to patients of M.A.S.H. residing in nursing facilities in the State of Alabama.  The facts below are derived from Plaintiff's Amended Complaint [Docket no. 7].

M-D Medical is a Mississippi corporation. Defendant M.A.S.H. is an Alabama corporation with its principal place of business in Alabaster, Alabama[5]. Defendant Horn is the president of M.A.S.H. and a resident of Alabama. Defendant Bordenca is the secretary/treasurer

---

[2] 28 U.S.C. § 1332 states:

(a)      The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between—

(1)      Citizens of different States; …

[3] "If the case involves more than one plaintiff and more than one defendant, the court must be certain that all plaintiffs have a different citizenship from all defendants."  *Getty Oil Corp. v. Ins. Co. of f. Am.*, 841 F.2d 1254, 1258 (5th Cir.1988) (citing *B, Inc. v. Miller Brewing Co*., 663 F.2d 545, 548–49 (5th Cir. Unit A Dec.1981)). (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267, 2 L.Ed. 435 (1806)).

[4] "Enteral nutrition generally refers to any method of feeding that uses the gastrointestinal (GI) track to deliver part or all of a person's caloric requirements. It can include an oral diet, the use of liquid supplements or delivery of part or all of the daily requirements by use of a tube." Donald F. Kirby, MD, FACG, and Keely Parisian, M.D, Eteral and Parenteral Nutrition, http://patients.gi.org/topics.enteral-and-parenteral-nutrition/ (Published September, 2011).

[5] "On March 31, 1993, M.A.S.H., Inc., and Alabama corporation, M.A.S.H. of Alabaster, Inc., and Alabama corporation, and M.A.S.H. of Crestview, Inc., a Florida corporation, merged with the surviving entity remaining as M.A.S.H., Inc." [Affidavit of Gregory Horn, Docket no. 3, Exhibit 1, ¶ 4].

of M.A.S.H. and a resident of Alabama.  M-D Medical alleges that Horn and Bordenca, as
owners/operators of M.A.S.H., exercise absolute control over M.A.S.H.[6]

On July 1, 2016, M-D Medical entered into a Subcontract Agreement (hereinafter
referred to as "the Agreement") with M.A.S.H. to provide inventory acquisition, delivery and
training products, and general product management to patients of M.A.S.H.  These patients
reside in nursing homes in Competitive Bidding Areas (hereinafter referred to as "CBAs") in the
State of Alabama.  The only signatories to the Agreement were M.A.S.H. and M-D Medical.

Plaintiff M-D Medical alleges that in marketing and selling products pursuant to the
Agreement, M-D Medical "advanced credit, money, product and/or services to Defendant for
business purposes in the amount of $153,681.17.00, such amount being presently due." [Docket
no. 1 at p. 3].  M-D Medical also claims that M.A.S.H has wrongly received payments belonging
to M-D Medical in the amount of $98,500.00 as a result of a third-party billing error.

M-D Medical's lawsuit seeks damages from all defendants for: breach of contract; bad
faith breach of contract; conversion; negligence and/or fraud; tortious interference with business
relations; and civil conspiracy.  M-D Medical also demands an audit or accounting of each
defendant[7] from July 1, 2016 to present, seeking disgorgement of any funds due to M-D
Medical.  M-D Medical further seeks to pierce to the corporate veil in its effort to obtain
damages from the individual defendants, Horn and Bordenca, for: breach of fiduciary duties;
breach of contract; malfeasance; and conversion and/or misappropriation of funds.

---

[6] Currently, approximately 47% of M.A.S.H., Inc.'s common stock issued to Horn and approximately 47%
of the common stock is issued to Bordenca. [Affidavits of Gregory L. Horn and Charles Bordenca, Docket
no. 3, Exhibits 1 and 2].

[7] M.A.S.H. ceased its operations on or about May, 2017 due to financial problems. [Affidavit of Gregory
L. Horn, Docket no. 3, Exhibit 1].

## II.  LEGAL STANDARD

A federal court sitting in diversity may exercise personal jurisdiction only to the extent allowed by a state court under applicable state law. *Mortensen Const. & Util., Inc. v. Grinnell Mut. Reinsurance Co.*, 718 F. Supp. 2d 781, 782 (S.D. Miss. 2010).  Under the Federal Rule of Civil Procedure 12(b)(2)[8], a defendant may move for dismissal on the basis of lack of personal jurisdiction.  "The party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. V. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

"The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997).  In making this determination, uncontroverted allegations in a plaintiff's complaint, other than conclusory allegations, must be taken as true. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)("the allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true.") Additionally, factual conflicts must be resolved in favor of the plaintiff. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F. 3d 865, 869 (5th Cir. 2001).

## III.  DISCUSSION

In diversity cases under 28 U.S.C. § 1332, such as this matter before the Court, the exercise of personal jurisdiction over a non-resident defendant must comport with both federal constitutional due process requirements and the long-arm statute of the state in which the district court is located." *Companion Prop. and Cas. Ins. Co. v. Palermo,* 723 F.3d 557, 559 (5th Cir. 2013)(citing *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006)).

---

[8] See footnote 1.

A. **Mississippi's Long-Arm Statute**

Under the provisions of Mississippi's Long-Arm Statute, Miss. Code Ann. § 13-3-57, three activities permit Mississippi courts to exercise personal jurisdiction over a nonresident defendant: If that person has (1) entered into a contract to be performed [in whole or in part] in Mississippi; (2) has committed a tort in Mississippi; or, (3) is conducting business in Mississippi." *Dunn v. Yager*, 58 So.2d 1171, 1184 (Miss. 2011) (citing *Yatham v. Young*, 912 So.2d 467, 469-70 (Miss. 2005)). These strictures of Mississippi's Long-Arm Statute are commonly referred to as the three prongs: the contract prong, the tort prong and the doing business prong.  Miss*ITL Int'l, Inc. v. Constenla S.A.,* 669 F.3d 493, 497 (5th Cir. 2012).

M.A.S.H. asserts that this Court lacks personal jurisdiction over all defendants because M-D Medical's Complaint lacks any factual allegations of any conduct by any Defendant that occurred in whole or in part in Mississippi [Docket no. 4, p. 1].  M-D Medical disagrees with M.A.S.H.'s argument, and for support, points to the exhibits.  Although Mississippi's Long-Arm Statute manifests three prongs, this Court will only address the contract prong to show that, here, personal jurisdiction exists over M.A.S.H.

**The Contract Prong**

Personal jurisdiction over a nonresident defendant is proper under Mississippi's Long-Arm Statute if the defendant makes a contract with a Mississippi resident "to be performed in whole or in part by any party in this state." *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 617 (5th Cir. 1989).

The parties herein, M.A.S.H. (Supplier) and M-D Medical (Contractor) entered into a Subcontract Agreement on July 1, 2018.  The "Background" section of the Agreement [Docket no. 7-1, p. 1] recites the following:

A.  Supplier is in the business of providing durable medical equipment, prosthetics, orthotics, and supplies ("DMEPOS") to patients residing in nursing facilities located in numerous areas subject to the Medicare Competitive Bidding Program ("Competitive Bidding Areas" or "CBAs").

B.  Contractor has experience and expertise in providing DMPEOS to patients so situated.

C.  Supplier desires to subcontract with Contractor to provide inventory acquisition, delivery and training in products, and general product management to patients of Supplier who reside in the CBAs, and Contractor desires to accept such subcontract arrangement.

The "Terms" section, following Background, provides:

In consideration of the mutual covenants contained herein, and other good and valuable consideration, Supplier and Contractor agree as follows:

1.  Contractor Services. Contractor will provide the following services ("Services") on behalf of Supplier to Supplier's patients who reside in the CBA:

a.  Contractor will sell to Supplier all necessary supplies for patients identified as requiring enteral feeding supplies in the designated facilities listed…Contractor will also provide the necessary manpower and processes to obtain medical documentation demonstrating the medical necessity for these supplies and will provide general inventory support and account maintenance needs to the designated facilities.

[Docket no. 7-1 at p. 1].

Thereafter, the Agreement sets out sections for Compensation, Term and Termination, Covenants of Supplies and Contracts, Insurance and Indemnification, and Business Associate Provisions.

The final section of the Agreement is headed, "Miscellaneous".  This section identifies the parties as "independent contractors", inter alia.  This section has a space for the name of a state for a choice of laws provision, but that space is left blank.

6

Also omitted from the Agreement is any discussion or provision relative to the source from which Supplier (M-D Medical) will obtain its inventory and supplies. The Agreement only speaks to providers being qualified and acting within the law.

The Agreement was negotiated by the parties in various stages and at various places. This Court agrees that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction. *See Colwell Realty Investments v. Triple T Inns*, 785 F.2d 1330, 1334 (5th Cir. 1986); however, this Court notes that significant portions of this Agreement were negotiated over the telephone, when M-D Medical was in Mississippi. Further, on August 10, 2016, Wade E. Ward ("Ward"), President of M-D Medical, proposed to Horn, President of M.A.S.H. an addendum to Agreement via a telephone call from Mississippi. Ward sent the proposed addendum to Horn via email from Mississippi. M.A.S.H. agreed to the proposed addendum and sent a signed Agreement via email to Mississippi on August 15, 2016, thus finalizing the contract in Mississippi. *Cirlot Agency, Inc. v. Sunny Delight Beverage Co.,* 2012 WL 1085867, *4 (Miss.Ct.App.2012)(when a nonresident defendant takes purposeful and affirmative action, the effect of which is to cause business activity, foreseeable by the defendant in the forum state, such action by the defendant is considered sufficient minimum contact for jurisdictional purposes, and since Plaintiff is a corporation located in Mississippi, its performance under the contract took place, at least in part, in Mississippi).

M.A.S.H. does not dispute that it negotiated and finalized various terms of the Agreement with M-D Medical over the telephone while M-D Medical was in Mississippi. Nor does M.A.S.H. dispute that it purchased, under the Agreement, products which were shipped from Mississippi warehouses. M.A.S.H. made payments by check for those goods in Mississippi. Those payment checks were processed by M-D Medical in Mississippi and deposited in

Mississippi banks.  This Court finds these factors to be sufficient to show that at least partial performance of the contract occurred in Mississippi. See *Sheridan, Inc. v. C.K. Marshall & Co., 360 So.2d 1223, 1225* (Miss. 1978)(jurisdiction appropriate under the Mississippi Long-Arm Statute where defendant contracted with Mississippi resident to rent equipment and rental payments made to Mississippi). See also *Aultman, Tyner & Ruffin, Ltd. v. Capital Rubber and Speciality Co., Inc.,* 2011 WL 213471, *7 (S.D.Miss.2011)(holding that performance of the contract occurred in Mississippi when the plaintiff, a law firm, rendered legal services from its office in Mississippi, numerous contacts took place in Mississippi regarding representation, all billing occurred in the Mississippi office, and checks for legal services were sent to Mississippi).

This Court is persuaded that the contract prong of the Mississippi Long-Arm Statute embraces this lawsuit.

### B.   <u>Constitutional Due Process Requirements</u>

The exercise of personal jurisdiction must also comport with the requirements of federal due process. *See Stripling v. Jordan Prod. Co*., 234 F.3d 863, 869 (5th Cir. 2000) (as cited in *Davenport v. Hansaworld* USA, No. 2:12-cv-233, 2013 WL 5406900).  Due process requires that a defendant over whom personal jurisdiction is sought to have certain minimum contacts with the forum state, "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice*." International Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945).

Personal jurisdiction may be general or specific.  General personal jurisdiction arises when the defendant's contacts are 'continuous and systematic'.  Plaintiff alleges personal jurisdiction that is "specific," that is, that Plaintiff's claims arise from the defendants' contact with Mississippi. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868 (1984).  Where a plaintiff alleges specific jurisdiction, due process requires: (l) minimum

contacts by the defendant purposefully directed at the forum state; (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable. *ITL Int'l, Inc*, 669 F.3d at 498.

Contracting with a resident of the forum state, along with the presence of some other factor or factors, is sufficient to satisfy due process. In *Medical Assurance Company of Mississippi v. Jackson*, 864 F. Supp 576, 579 (S.D. Miss. 1994), the Court determined that the defendant's initiation of the contract in the forum, ongoing communication in the forum, cashing a check from a state bank in the forum, and returning the release to the forum, were sufficient contacts to comport with due process. *Id*.

This Court is persuaded that M.A.S.H.'s entry into the Agreement's Addendum with M-D Medical in Mississippi, makes it amenable to suit in Mississippi.  Further, M.A.S.H. conducted ongoing correspondence with M-D Medical in Mississippi; M.A.S.H. purchased products from M-D Medical in Mississippi; and M.A.S.H. sent payment for goods received to M-D Medical in Mississippi.  In short, the record supports that M.A.S.H. directed contact toward the forum (Mississippi), such that it was foreseeable that M.A.S.H. could be haled into court in Mississippi without offending due process.

### C.  Piercing the Corporate Veil as to Defendants Horn and Bordenca

Mississippi case law reflects a strong commitment to the legal integrity of the corporate entity and a longstanding belief that a Court should pierce the corporate veil only under extraordinary circumstances. *See, e.g., T.C.L., Inc. v. Lacoste,* 431 So.2d 918, 922 (Miss.1983); *Gardner v. Jones,* 464 So.2d 1144, 1151 (Miss.1985); *Rauch Industries, Inc. v. Poloron Products of Mississippi, Inc.,* 362 So.2d 605, 607 (Miss.1978).

On their "piercing the veil" argument, Plaintiff had this to say in Plaintiff's Response in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Docket no. 7]:

"In this case, Defendants Horn and Bordenca have not produced any records to show that they kept corporate minutes, or that they acted through any resolutions, including the decision to close M.A.S.H.  They have not produced any 'loan documents' even though they instructed their attorney to call Mississippi to disclose that they had made personal loans to the company. Additionally, they have failed to disclose to the Court their personal emails and texts sent to Mississippi." [Docket no. 7 at p. 14].

"[M.A.S.H.] repeatedly prepared checks payable to M-D Medical in order to pay the money admittedly owed but those checks were never sent by M.A.S.H because Defendants Bordenca and Horn, as officers, directors, and only check signors, violated their duty by refusing to sign the checks. Thus, fraudulently converting M-D Medical's money…" [Docket no. 7 at p. 14].  Further, says M-D Medical, "Defendants Bordenca and Horn made phone calls, and directed their attorney to make phone calls, into Mississippi to state that both Defendants Bordenca and Horn knew money was owed to M-D Medical but had personally loaned money to M.A.S.H.  Presumably, Defendants Bordenca and Horn failed to sign the checks prepared by M.A.S.H. for M-D Medical so that they could convert the money and enhance the opportunity to repay or protect themselves rather than M-D Medical…This evidence shows that Defendants Bordenca and Horn actively participated in the fraud and conversion against M-D Medical, thus causing injury to M-D Medical in Mississippi." [Docket no. 7 at p. 15].

After discovery, Plaintiff should know whether these allegations have the force of "facts"; therefore, this Court will defer ruling on piercing the corporate veil as to the individual defendants, Horn and Bordenca until the parties have conducted discovery in this matter. This

Court will allow M-D Medical leave to resubmit this theory.  Meanwhile, discovery on plaintiff's accusations should proceed.

## V.  CONCLUSION

For the reasons stated herein, this Court concludes that it has authority under the Mississippi Long-Arm Statute to exercise personal jurisdiction over the Defendants.  This Court further finds that the exercise of personal jurisdiction by this Court would be proper under the Due Process Clause because sufficient evidence exists showing Defendant M.A.S.H had requisite minimum contacts with the State of Mississippi, or purposefully availed itself to the benefits of the State, to support this Court's exercise of personal jurisdiction over M.A.S.H.

This Court similarly is convinced that M-D Medical has shown enough at this point to warrant this Court's maintenance of personal jurisdiction over defendants Horn and Bordenca to resolve the issue of piercing the corporate veil.

**IT IS, THEREFORE, ORDERED that the Defendants'** *Motion to Dismiss Pursuant to Rule 12(b)(2)* **[Docket No. 3] is DENIED.**

**SO ORDERED AND ADJUDGED this the 28th day of March, 2019.**

**/s/HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**